2009-11-13 This is a case about gloves, and Mr. Peterson, you're going to help us get our hands around this case. Absolutely. I think we have a mixture of left handers and right handers on this panel, so that's not a factor. No, not a factor, and that's not necessarily the invidious discrimination that we're talking about. But while this case is about gloves, it's actually about a larger issue, which is the constitutionality of various provisions of the Harmonized Tariff Schedule of the United States, which on their face discriminate on the basis of gender. How many of those are there? There are probably about 100, mostly concentrated in areas of wearing apparel, footwear, usually personal articles. Does that include categories in which you say men something or other versus women something or other, or does that include categories of tuxedos versus evening gowns, because they're both evening apparel, but one's clearly... In most cases, there's a specific gender reference in the tariff. In a few cases, there might be references to women's blouses as opposed to men's shirts. But for the most part, as in this case, the sexual or the gender distinction is explicit in the statute. And this is a case involving leather gloves, and what we have here is we have... Who's unconstitutionally burdened by this tariff? The importers. And they're not necessarily men. They could be women as well, right? Right, but the Supreme Court has said that the Equal Protection Clause prohibits the imposition of a tariff or the imposition of an excise on goods of a kind used by a particular class of persons. So the tax doesn't necessarily have to fall on an individual. It can fall on a class of property favored by individuals. So you put tax on... If all of the documentation out there shows that men drink some sort of bourbon at 10 times the rate of women, so if you put a tariff, an added tariff, on that particular liquor, you're suggesting that that, too, would be an unconstitutional burden on men? Well, no, it certainly wouldn't be a facially discriminatory tariff, and we're really only talking about facially discriminatory provisions here. So what's the difference? What makes that not facially discriminatory and this facially discriminatory? Because in that case, there's only one class of property, bourbon, and it's being assessed with a single rate of duty, regardless of who uses it. Basically, it's a gender-neutral provision. But isn't that potentially the same thing with respect to gloves here? They have different appearance, tend to be different size, different channels of distribution, things like that. It's just that the theory of the tariff schedule appears to be that it's a different product. Well, in some cases, that really isn't the case. They're both gloves. They're both leather gloves. They're both seamed leather gloves. The only thing that distinguishes the rate that's imposed is the determination of the customs officer whether they're for men or for women. Well, the importer identifies them as one or the other in the import documents, right? Well, but customs classifies them. Is that not correct? Pardon? Am I correct about that? Well, the importer's identification in the entry papers- Is it women's gloves or men's gloves? That's not dispositive. What is dispositive- They do do that, right? Yes, they do, and customs may or may not accept it. What customs does is customs, a governmental actor, makes the determination. Typically, the importer's designation is accepted, right? In some cases. In other cases, it may not be. Is there a lot of litigation about whether gloves are men's or women's gloves? There have been some cases, especially in the footwear area, where the- Not gloves. Not gloves, not gloves. But you see, the question here is what standard of review applies and whether we have given a sufficient pleading to get that standard of review. If there is a facial discrimination in the statute based on gender, which there is here, a discriminatory intent is presumed. Discrimination against gloves or the men who wear them? It's discrimination against men, and it's discrimination on the property that men use, which is a sufficient unconstitutional discrimination. In the case of Gray v. Alexandria Women's Center, the Supreme Court said, well, a tax on wearing yarmulkes is a tax on Jews. In this case, we're talking about, as it were, a tax on the yarmulkes itself. But you're saying that, but you also told me earlier that the person or group that's unconstitutionally burdened by this tax are the importers, not necessarily- They are the importers, and they are burdened because they are serving a particular class of individual. They are burdened because they're serving men as opposed to women. But what if women buy the gloves for men? Well, see, that gets into the question that the lower court's decision is trying to impose on us. See, this is a question of the standard of review and when you apply that standard of review. It's not necessarily unconstitutional to have a distinction between men and women or to have a distinction between their products in the tariff. The question is, who's got the burden to justify it? Now, this court's holding in the Berkeley case- this was the panel that decided the Berkeley case- said that when you have a facial discrimination, the burden, the intent to discriminate is presumed, and the burden shifts to the government to show the exceedingly persuasive justification. What if the gloves here, what if the tariff distinction was between gloves size 7 1⁄2 or less versus gloves size greater than 7 1⁄2? Well, then I would agree that there would be a burden on the plaintiff to make a showing that somehow that was discriminatory in a way that the Constitution prohibits. It wouldn't be facial. The discriminatory intent would not be presumed, and then we would have to have a hearing or we would have to make the factual showing. But there don't have to be a facial discrimination if, for example, there were a sales tax that said women who buy gloves have to pay a 5 percent sales tax and men have to pay a 4 percent sales tax. That would be a facially discriminatory tax. But this is just on a category of product, right? Well, if one were to say that, see, that's the problem with the lower court's decision. What the lower court's decision is asking us to do, and I think this would answer your question, Judge Lurie, they're saying, well, we have a facially discriminatory tariff. We have a provision which appears to have a gender decision on its face. Now, normally, under this court's holding in Berkeley, that's enough to shift the burden to the government to justify that, show us why it's justified. But what the lower court is saying is they're saying, okay, there's a discrimination. It's based on gender. It falls on importers who import goods for that gender. It's not a discrimination against people, though. It's a discrimination against products. Well, it's a discrimination against people based on the products they use or the products they choose to deal with. See, for example, if there were a tax on, say, getting a teaching license and a higher license were charged for a teacher who said, well, I intend to teach black and minority children, I think that would be an unconstitutionally discriminatory tax, even if the teacher who was being taxed was not a black or minority person. I want to give you a hypothetical. Suppose that 50% of the women's gloves that were imported came from Italy and the rest from a whole variety of countries and that a very small percentage of the men's gloves that were imported came from Italy and there's a concern about Italy maybe competing unfairly, whatever. So the government's purpose is to say, you know, because a large proportion of this category, women's gloves, comes from Italy, we're going to have a higher tariff rate on that than for men's gloves. Is that unconstitutional? Not if they can show the exceedingly persuasive justification. But the question is, at what point does the burden shift to the government to show that? See, in this case, and the Court of International Trade admits, you've got essentially a gender discrimination on the face of the statute. If I import $10,000 worth of gloves for men, I pay $140 in duty. If I pay the same amount of identical gloves for women, I only pay $125. So at the moment of taxation, there's a clear discrimination visited on me. I am being taxed more heavily because I have elected to deal in products which are favored by one gender or the other. What if I open a store, a $5 store, and it's only products for men? Is that gender discrimination? I don't carry any products available for women. I charge $5 or less for everything. There's no other store around that charges that little for these goods for women. Am I discriminated? Not in the terms of a tax assessment. You're not necessarily discriminated against by the government or by a governmental statute, which is the case here. See, the problem with the lower court's decision is they're saying, you know, yeah, you've got basically a discrimination based on gender. It's being visited on a class of people that we can identify, the importers. We can identify and quantify the discrimination. So your view is that this entirely depends on the burden of proof, that there could be a lot of justifications for having different tariffs on men's and women's clubs, but it's up to the government to justify the difference. Right, and the only question here is, have we done a sufficient pleading to shift that burden to the government? But you haven't alleged in the pleading that it was purposeful discrimination, right? If it's facial, it's presumed to be purposeful under variety. There wasn't an intent on the part of Congress to distinguish. We don't know what the intent on the part of Congress. You're not alleging that. Yeah, we don't know what their intent was. It's presumed to be discriminatory because it's facial. Now, as you were saying before, if they can go back and say, well, we have a higher tax on men's gloves because we were protecting a men's glove factory, that might be enough or may not be enough, depending on what the Court of International Trade says, to justify the discrimination. But I don't think in this case it is because, frankly, until 1993 or 1994, the duty rates on all leather gloves were the same. The men-women distinction didn't come in until then. Do you allege in the complaint that there's no basis for the distinction? I believe so, yes, Your Honor. Could you show me where? I have a copy of the complaint here. Again, the basis simply has to be the discrimination is facial, and at that point there is a presumption. I know in page 13 of the complaint we say there's no justification for discrimination, for discriminatory attempts based on age. And in paragraph 12 we say there's no important governmental objective at stake that provides an exceedingly persuasive justification for different rates of customs duty or tax based on gender. And that's all we have to plead at this point. What the lower court was suggesting is, well, can you show me that after the discrimination has occurred, maybe subsequent events are more neutral in impact? But that's not the test. We're challenging the governmental action, not what follows. The only question here is whether or not we've done a sufficient pleading to shift the burden to the government to show the exceedingly persuasive justification. We haven't reached the point of addressing the constitutionality. Exceedingly persuasive justification? Yes. What would be an exceedingly persuasive justification? That would have to be determined by the court. It may very well be that the government may look at this particular provision and say we can't. Size? I think it would have to do something with protection of a domestic industry or the determination that there's some very important difference in the product between men and women that justify treating them differently. You mean only men are employed in the factory making men's gloves and women in the factory making women's gloves? I think that would be fairly remote to furnish basis. But that's all that we're asking for. And one of the reasons that we had a final dismissal rather than file an amended complaint is because the lower court said you have to make some other showing. They're horribly unspecific about what kind of showing we'd have to make, and there has never been a case. You're well into your rebuttal time, which I assume you'd like to say. I'm going to wrap up now, but I'm going to say there's never been a case where facial discrimination has then required another showing of some damage beyond the facial discrimination. That's for the damages hearing. That's for the injury or damages part of the case. That's not an element of the pleading. Thank you, Your Honor. Thank you, Mr. Peterson. Ms. Davidson. May it please the court. This court and the Supreme Court have long held that there is no right to import, there is no right to a particular rate or duty, and that the imposition of different taxes on different products does not violate the Equal Protection Clause. Totes agrees that these are different products. What Supreme Court case says that there's no equal protection issue? Ben's Gap. It involved a state tax, not an import duty. But it was a state tax, and it was adjudicated. It's cited in our brief, Your Honor. It was adjudicated under the 14th Amendment Equal Protection Clause, and the Supreme Court held that the imposition of different taxes on different products did not violate the Equal Protection Clause. Now, this is a case in which we're dealing with the tariff schedules, the uniform tariff schedules, which apply to all the trading companies in the entire world. So if the Uruguay Round comes up with we're going to add 5% to the tariff for all goods, men's goods, and Congress adopts that, no one can challenge that? That would not be a facial challenge, because in order to allege a facial challenge of the Equal Protection Clause, the complaint would have to allege that similarly situated persons are receiving unequal application of the laws. Totes has not alleged that any similarly situated importer or other person is receiving the unequal application of the laws. Importers, no. That strikes me as silly. I mean, the importer, just as the seller of liquor in Craig against Boron, has the standing to assert the rights of the women or the men who are being discriminated against. But Totes is expressly not asserting a claim on behalf of third parties. It made that crystal clear before the court below and in its briefs that it is only asserting a claim on behalf of itself. I agree that if it tried to assert a claim on behalf of users of gloves, as in Craig v. Boron involving the sale of beer, that that might be able to state a claim. I'm having trouble seeing the difference, but I don't want to take up your time. Totes is an importer of many products, but in this case it is talking about men's gloves versus other gloves. To the extent that it imports gloves that it does not think are men's gloves, that are unisex, for example, or boys' gloves or women's gloves, they would fall under the other category, not as men's gloves. So its only allegation is that when it imports one product, it pays a certain rate, and when it imports another product, it pays a different rate. Suppose there were a sales tax. We had a sales tax, and the tax on women buying gloves was 5%, and on men buying gloves it was 6%. Would that pass muster under the Equal Protection Clause? Well, it would state a claim, because it would be a tax on persons, not on products. And I think that's the Allegheny case, where taxpayers were assessed property taxes based upon different methodologies. And that also is the wearing of the yarmulke example, where in that hypothetical a tax is imposed on an individual wearing a yarmulke. But here we are only talking about rates of duty on products, and the Supreme Court has said many times that the imposition of a duty is an imposition on the product, not on the individual. Well, what if statistically, what if they came in with studies that showed that the importers passed all of the increase, or the differential between the two tariffs for men and women's gloves, on to consumers, so that we could establish firmly on the record that people purchasing men's gloves were clearly, it was as if they were automatically getting differential in tariff rates. And Totes was asserting a claim on behalf of the consumers? Correct. That would be a different case. That would be much closer to Craig versus Boren, where the bartender or the owner of the bar was asserting a claim on behalf of consumers of beer. But they're not asserting that type of claim, and they've made that crystal clear. In this particular type of case, where the Constitution has delegated... I would have thought your argument here was that men's gloves and women's gloves are just viewed in the industry as different products, different channels of distribution, different manufacturers, different countries producing them, and that those kinds of differences justify having a different duty on one as opposed to the other. Isn't that true? Well, if we ever, unfortunately ever, have to get to the point of defending on the merits, we, of course, would make those arguments. But those arguments would go to the justification of the government in imposing different rates. And we respectfully submit that we shouldn't get to that point, that in fact... Well, it's a question of who has the burden. Maybe they have the burden of refuting that. Well, they first had the burden of alleging a facial claim, and the trial court correctly held that they had not alleged that similarly situated persons are being treated unequally. Only, in their view, different varieties of the same general product are being subjected to different duties. But if you notice in the tariff schedules, men's gloves are delineated by both lined and unlined, and other gloves are separated by lined and unlined, because at one point in history, whether gloves were lined also affected the tariff duty. It doesn't affect the rate now, as we have evolved, and all of the countries of the world, the trading companies, countries have negotiated these rates. But there are other distinctions in even these tariff categories other than men and other. And the other category is not even women. It's just other than men. So there isn't really, even if gloves were similarly situated individuals, there isn't even a clear distinction between men and women. It's men and other, which includes boys and unisex gloves. You've argued the political question here. Yes. But this is interpreting a statute, isn't it? This is not interpreting a statute. It's challenging the constitutionality of a statute in an area where the Constitution allocates plenary authority to the political branches. If we were to reach the merits... How do you distinguish Japan whaling? Sure. Japan whaling is a standing case, and it holds that end political question. But in that case, the Supreme Court made clear that at bottom, the challenge was to the authority of the Secretary of Commerce in certifying or not certifying whether Japan was complying with the treaty. So it was interpreting a statute, not challenging the constitutionality of the statute in the foreign affairs area. It was interpreting the statute in the area of authority. Here, the statute is being challenged on its merits, on the substance, the constitutionality of the statute. But in each case, we're adjudicating a legal issue relating to the statute. But here, if this case were to proceed to the merits, the court would have to second-guess the president, the participants, negotiators, the hundreds of advisers that participated behind the scenes in supporting the negotiators and Congress. So what? It's a legal question. It's not a function for the court. This is not... It's not a function that the court... The whole range of constitutional questions would be political questions. I mean, there are all sorts of international implications for statutory construction, constitutional cases, and they're not held to be political questions. But not normally in the equal protection area. Equal protection is different than other constitutional areas? Well, in looking at the government purpose, in looking to see whether the government had an exceedingly reasonable basis for this distinction, the court would have no standard and would have no basis to second-guess Congress and the president in negotiating with 150 different countries these various tariff categories, all of which have long histories and have been negotiated over decades, if not hundreds of years, by the United States and its trading partners. Respectfully submit that the court is not as equipped as the political branches to make those determinations. I would like to turn for a moment to standing and jurisdiction. Based upon this court's decision in RJ, TOTS does not possess standing to assert a claim for equal protection. In RJ, this court held that Toshiba did not have standing to assert a claim based upon the Bill of Attainder when all of its imports were excluded from the country. And there's no distinction between that case and this case. Craig versus Boron, you know? But they're not asserting a claim on behalf of a third party. How do we know? They've said so repeatedly. Where? Well, in the transcript from the hearing below and in their briefs on appeal and in their briefs before the Court of International Trade. They are only asserting a claim on behalf of themselves. But in Craig versus Boron, the seller of the alcoholic beverages was trying to protect itself from prosecution. But the court found standing based upon assertion of claims on behalf of men who had to pay a 3% tax on beer consumption and said because you can't expect customers who are just buying a pint of beer every once in a while to bring this case, the bar owner could have standing on their behalf. TOTS is not making that claim. It was asked many times by the court below and it disavowed that claim. Finally, on the point of jurisdiction, TOTS is trying to bring this claim under Section 1581I. What it is seeking is a refund of customs duties. It can't obtain a refund of customs duties under 1581I because under this court's decisions in, for example, motion systems, a cause of action under 1581I is based upon the Administrative Procedure Act. The Administrative Procedure Act does not provide for monetary relief. Moreover, there is no final agency action here that could form the basis of an Administrative Procedure Act claim. The agency couldn't respond to a constitutional challenge. The only agency involved here is the Customs Service and there is a clear avenue to file a protest and then to challenge in the Court of International Trade under Section 1581A. But Judge Schlur is correct. They couldn't hold the terror classification unconstitutional. No, they could not, but the Supreme Court has said many times, including in Clintwood-Elkhorn recently, that futility based upon a constitutional claim is not a reason to excuse a party from failing to exhaust its administrative remedies. In Clintwood-Elkhorn, it was similarly a constitutional claim based upon the Export Clause. The Supreme Court said, citing numerous precedents, that Congress can impose whatever terms and conditions it wants on a waiver of sovereign immunity, including requiring taxpayers to exhaust administrative remedies on constitutional claims and that there's a reason for that. There are numerous reasons. One is it puts the government on notice early. Is there a difference between the language of the Internal Revenue Code provision involved in Elkhorn and the language of the provision involved here? The language under the Internal Revenue Code is very, very strong. It says any many times and the Court noted that. However, the language here also says, shall file a protest before bringing suit in the Court of International Trade. And the language here is exactly like the language in Extra, AEC, TRA, a recent decision by this Court cited in our briefs, which involved a duty drawback claim and similar language to the language here. And this Court held, citing Clintwood-Elkhorn, that the party seeking drawback had to file a protest and exhaust its administrative remedies before bringing its claim. It couldn't say, well, that would be futile and proceed under Section 1581I. There's another reason to require importers to exhaust their administrative remedies is that there may be times, for example, when the constitutional issue might be obviated. Toadsmite thinks it's importing men's gloves. The import specialist might look at them and say, oh, actually, these are other gloves, so we don't have to get to your constitutional claim. Or there may be timeliness issues. So we respectfully, although the trial court correctly held that Toads had failed to state a cause of action, failed to state a claim for which relief may be provided, there were other threshold reasons why the court should have dismissed the case, including political question, standing, and jurisdiction. Thank you, Ms. Davidson. Mr. Peterson has a little time left. Very quickly, Your Honor, three quick points. First of all, the plaintiff's standing to bring this case isn't challenged. The lower court held that we had Article III standing, both constitutional and prudential standing. As to the question- Is the government correct that you gave up the Craig versus Boron theory? No, we don't claim Jus tertiae standing on behalf of third parties because the third parties, in this case downstream purchasers of gloves, would not themselves have Article III standing to contest the duty. They're not the importers. They don't pay the duty. The party with the Article III standing to challenge the duty, which is the unconstitutional imposition, is Toads. It is the importer. And we were held to have standing. The RJ case is not implicated here. Sure, nobody has a right to import, but Congress has not limited the right to import gloves. What it's done, and what's being challenged here, is they've imposed a discriminatory tariff rate. So RJ doesn't really apply. Finally, on the question of jurisdiction, my esteemed opponent is incorrect when she says that you can't get money back under a Section 1581I case. In the happy memory of United States Shoe Corporation, the challenge to the Harvard maintenance tax of more than a billion dollars worth of taxes, which were by law construed to be duties, were repaid based on 1581I matters. Now, finally, as far as exhaustion of remedies, this court's Thompson Consumer Electronics case says it would be futile for us to go through an administrative protest when we're challenging the constitutionality of a statute. And the CIT's governing court... Not quite. Not quite. Thompson suggests that there may be situations in which you still have to exhaust your administrative remedies when you're challenging a statute if there are factual determinations that would have to be made by the customs, sir. But this is not one of those cases. Why not? Because there's no challenged factual determination. Well, it seemed to me that we've been asking a lot of questions about what the facts are, and you keep saying that it's the government's burden to show this, to show that, to show the other. No, the fact that one could protest if the government had classified our gloves as men's gloves and we said that's incorrect, that we could protest. Well, we don't question that. We agree that these are men's gloves, but then the question that flows from that is purely statutory. Is the statute which imposes the differential tax on us constitutional? And customs, this court's repeatedly held that customs doesn't have authority to set aside an unconstitutional statute. And unless there are any questions... Thank you, Mr. Peterson. Take the case under advisement.